IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Reginald Eric Sprowl ) | Civil Action No.: 8:08-3316-RBH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Pfizer, Inc., ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to both the plaintiff's claims and its counterclaim. [Doc. 60.] The plaintiff has plead claims for racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. § 1981; breach of contract; breach of contract with fraudulent intent; negligent supervision; and intentional infliction of emotional distress.[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The defendant is a research-based pharmaceutical company engaged in the discovery, development, manufacture, and sale of prescription medications. The plaintiff began his employment at the defendant's Greenwood facility, on April 29, 2002, as a second shift Utility Service Worker in the printing department. (Am. Compl. ¶7; Def. Ex. B at 34.) In January 2004, the plaintiff applied for and was awarded the position of Electronic Technician in the defendant's electronics department. (Def. Ex. B at 45-47.)

---

[1] The plaintiff has expressly abandoned his claim for intentional infliction of emotional distress but has also not made any argument or evidentiary showing as to his negligent supervision claim. The Court considers it abandoned as well.

In March 2008, the manager of the electronics department, David Grant, announced that the electronics department would be reorganized. (Def. Ex. A at 33; Def. Ex. B at 58-59.) The reorganization was not designed to increase the number of employees or add "head count" in the department, but was designed to remedy an imbalance in the shifts to ensure there would be two "call technicians" on each shift with one "relief technician." (Def. Ex. A at 35-37; Def. Ex. B at 58; Def. Ex. D at 76.)

As a result of the reorganization, a day shift Project Technician position became available. (Def. Ex. A at 33; Def. Ex. B at 58-59.) The selection criteria for the position were colleague performance, attendance, skills, and, in the case of multiple applicants with similar performance, seniority. (Def. Ex. A at 34–35; Def. Ex. B at 60; Def. Ex. D at 32, 35.) The position was announced within the electronics department, and all current technicians in the department were invited to apply. (Def. Ex. A at 33; Def. Ex. B at 58-59.) Six colleagues acknowledged their interest in the day shift Project Technician job by responding to Grant's electronic posting: Ken Turner, Robert Maxey, Scott Walker, Bob Williams, John Watson, and Eric Sprowl. (Def. Ex. A at 42; Def. Ex. D at 35, 52; Def. Ex. B at 104-05.) All, except the plaintiff, were white males. *Id.*

Grant selected Scott Walker for the day shift Project Technician position on March 10, 2008, because he believed Walker was the most qualified person based upon the selection criteria. (Def. Ex. D at 69, 96, 105–06.) The plaintiff was not accepted, in part, because he had been given a verbal warning within the prior 12 months and, therefore, it was considered that his performance had been less than Walker's during that time. (Def. Ex. D at 70; Def. Ex. B at 73-77.) The defendant also generally represents that Walker was chosen because his performance evaluation rankings were higher and because he was a more skilled technician than the plaintiff. (See Def. Ex. D at 105-06.)

The plaintiff contends that his bid for the position was rejected because he is black.

2

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I. Effect of the Plaintiff's Bankruptcy

As an initial matter, the Court would consider the defendant's contention that this case should be dismissed for the plaintiff's lack of standing to prosecute the claims because he was in bankruptcy at the time his rights in the present causes of action accrued. The defendant argues that, as a result, the claims are properly considered assets of the bankruptcy estate and not that of the plaintiff's.

Under federal bankruptcy law, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code imposes upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. 11 U.S.C. § 521(1) ("The debtor shall-(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs."). A cause of action constitutes an asset of the bankruptcy estate. *See Taylor v. Swirnow,* 80 F.R.D. 79, 82 (D.

Md. 1978). Moreover, "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *National Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999). The plaintiff, therefore, lacks standing to bring his claims unless they have been exempted from the estate or abandoned by the trustee of the estate. *See Miller v. Pacific Shore Funding*, 92 Fed. Appx. 933, 937 (4th Cir. Jan. 28, 2004); *Brockington v. Jones*, 2007 WL 4812205, at *3 (D.S.C. 2007).

It is undisputed that the plaintiff never disclosed his putative claims for discrimination and breach of contract against the defendant. As a matter of law, he is considered as having been aware of the claims on March 10, 2008, when Walker was selected for the Technician position (Def. Ex. D at 69, 96, 105), under allegedly discriminatory circumstances. Critically, however, the plaintiff has represented that his bankruptcy plan was approved sometime prior to that date, in or around January 2008. While the plaintiff's effort as to this point is alarmingly thin, over a matter so devastatingly material, the defendant has not disputed the timing of the bankruptcy plan's approval. It is true that there exists an ongoing duty to disclose assets in bankruptcy to the trustee. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.2005). But it appears that once a bankruptcy plan is approved, assets "acquired post-confirmation are not property of the bankruptcy estate unless they are necessary to maintain the bankruptcy plan." *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir.2000). Here, there is no evidence or argument that somehow the plaintiff's after-acquired legal claims against the defendant are necessary assets to facilitate the bankruptcy plan, previously confirmed. Accordingly, the Court would not recommend dismissal for any lack of standing of the plaintiff.

## II.    RACE DISCRIMINATION (FAILURE TO PROMOTE)

The plaintiff first contends that he was discriminated against on account of his race in that the defendant rejected his bid for the Project Technician position. The plaintiff alleges that the defendants accepted the bid of a less qualified, white male over him.

As the Fourth Circuit has explained, the plaintiff may avert the defendant's summary judgment motion and establish his failure to promote claim "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race or gender motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. The impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m).

Alternatively, a plaintiff may "proceed under [the McDonnell Douglas] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff does not attempt to establish his discrimination claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802-05. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. *Id*. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the

6

picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *Id*.

Both the plaintiff's Title VII and Section 1981 claims are properly considered under *McDonnell Douglas*. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir.2004); *Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003) ("In failure-to promote cases such as this, .the framework of proof for disparate treatment claims . . . is the same for actions brought under Title VII, or § 1981, or both statutes.'").

### A. *Prima Facie* Case

To establish his *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that he is a member of a protected class; (2) that he applied for the position in question; (3) that he was qualified for that position; and (4) that the defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination. *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

The defendant contends that the plaintiff cannot establish the fourth element. The defendant has put forward evidence that six individuals initially expressed their interest in the position. (Def. Ex. B at 104.) Of those candidates, the plaintiff was the only African American, and the other five were white males. *Id*. at 105. The defendant's evidence also indicates that four of the six applicants, three white individuals and the plaintiff, were rejected because they had prior disciplinary actions in the past 12 months. (Def. Ex. A at 56.)

In response, the plaintiff emphasizes that a white individual, Scott Walker, was selected over him, as evidence of circumstances giving rise to an inference of discrimination. It is not enough, however, that the plaintiff is a black male and that the Project Technician position was filled by a white male. *See Holmes v. Bevilacqua*, 794 F.2d 142 (4th Cir. 1986). "[T]he naked fact that one not in the protected class receives the

benefit sought by the protected plaintiff, or is spared the hardship the plaintiff hoped to avoid, cannot be sufficient to satisfy the purposes of the fourth *McDonnell-Douglas* prong." *Barnhill v. Aratex Services, Inc.*, 1987 WL 44690, at *2 (4th Cir. August 28, 1987) (citing *Holmes*). To satisfy the fourth element, the plaintiff must point to "some evidence that race was a determining factor in the employer's decision." *Holmes*, 794 F.2d at 147.

The plaintiff argues, however, that he was the most qualified, *available* candidate for the position. More specifically, the plaintiff contends that Walker was actually ineligible to bid for the position, for reasons the Court will discuss in greater detail below, and should, therefore, have never been considered for the position, in the first instance. Of the remaining applicants, which the plaintiff has unilaterally deemed as properly eligible, he suggests that he was, in fact, the most qualified. (Pl. Resp. at 7.)

But, the plaintiff has not actually demonstrated greater qualifications than Walker, the individual who received the Project Technician position. In fact, the plaintiff has conceded that Walker had a higher evaluative average. *See id*. So the plaintiff has not produced any evidence from which a reasonable jury could infer discrimination on account of a suspicious or unexplained differential in relative qualifications between himself and Walker. The fourth element, therefore, is not satisfied on a qualifications basis.

The Court would not suggest that relative qualifications, however, is the only manner in which the plaintiff may satisfy the fourth element of his *prima facie* case. Some deviation from normal promotions practice, as the plaintiff alleges, might qualify as evidence from which an inference of unlawful discrimination may be derived, under certain circumstances. But, because that analysis is largely duplicative of the plaintiff's arguments in regards to pretext, the Court will consider it there. Regardless of where considered, the Court cannot recommend that the plaintiff has evidence which satisfies the fourth element of his *prima facie* case.

### B. The Defendant's Legitimate Non-Discriminatory Reasons

To the extent the plaintiff could ever establish a *prima facie* case, the defendant has met its burden of production by generally identifying the following legitimate, non-discriminatory reason for rejecting the plaintiff's application for the Project Technician position: that Walker was better qualified than the plaintiff for the position. "Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

### C. Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for termination, the plaintiff bears the burden of demonstrating that the real reason for discharge is an illegal one. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000). As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendants' proffered reasons are pretextual or false. *See id.* at 144.

First, the plaintiff contends that the plaintiff's performance evaluations were improperly affected by the defendant's use of disciplinary events outside of the relevant evaluation period. The defendant considered the average of the candidates' performance evaluations from the two prior years. (Def. Ex. D. at 53.) Without much explanation, the parties appear to agree that relevant *disciplinary incidents*, however, were only considered to the extent they occurred within the 12 month period immediately prior to the March 2008 selection of the Project Technician. (Def. Mem. Supp. Summ. J. at 13; Pl. Resp. at 5-6.) The plaintiff summarily complains that incidents prior to March 2007, over 12 months before the rejection of his bid, were considered.

The Court would first say that there does not appear to be any specific evidence that the defendant was somehow unequivocally constrained to consider only incidents in the previous 12 months. The plaintiff has certainly not offered any. (See Pl. Resp. at 5.) Second, the plaintiff has not produced any evidence that earlier disciplinary incidents were actually considered. He simply claims it. As far as the Court can tell, there is no evidence of reliance on any incidents prior to the 12 month period. The accusation is entirely undeveloped. But, even were the Court to accept the 12-month period as a limitation on the defendant's discretion and even were the Court to credit the plaintiff's unsupported allegations that temporally irrelevant incidents were considered, the plaintiff has admitted that he received, in the least, a verbal warning within the relevant 12-month period, which was properly relied upon by the defendant. (Pl. Resp. at 6; Def. Ex. A at 56-57.) The defendant has submitted evidence that the verbal warning was reduced to, or memorialized in, writing.[2] (Def. Ex. A at 56-57.) The plaintiff makes no effort to explain or demonstrate, what he would dismissively imply (Pl. Resp. at 6), that a verbal warning was an insufficient disciplinary incident upon which to disqualify his bid. The Court cannot see it. The defendant has put forward evidence that the decision maker solicited information concerning "any warnings," written or otherwise, in reviewing the candidates relative performance. (Def. Ex. D at 53, 70, 74, 77-78.) The plaintiff has offered nothing in response or contradiction.[3] There is no evidence that would make pretextual the

---

[2] The plaintiff has gone to specific lengths to emphasize that the warning was erroneously characterized as "written" in an email. Because the warning is material, whether verbal or written, any such error is harmless.

[3] The defendant anticipates in its memorandum in support, and then surmises, in its reply, that the plaintiff is attempting somehow to hold the defendant to the demands of its Hourly Job Posting Practice policy in regards to consideration of his verbal warning. (Pl. Attach. XII.) The defendant so believes because of the plaintiff's insistence that any relevant warning must have been a written, as opposed to, a verbal one. The Posting policy does indicate that individuals who have had written warnings within the 6 months prior are disqualified for bidding for the position. *Id.* But, the plaintiff has not actually made any such argument, as far as the Court can discern. And, the undersigned will not guess about it. But, even if the plaintiff had, the defendant did not actually disqualify the plaintiff from bidding for the position or from consideration, as the policy seems to contemplate. Rather, the verbal warning was simply considered in regards to measuring

defendant's consideration of a verbal warning within 12 months of the plaintiff's bid for the position.

Of course, to the extent the plaintiff means to say that because prior year's evaluations necessarily include the consequences of disciplinary events during those evaluation periods and that consideration of them implicitly involved an improper review of discipline outside the 12-month window, the argument seems strained at best. Again, as far as the Court has been informed, recourse to prior years performance evaluations was a permissible basis to determine the candidates relative qualifications. The plaintiff has not offered evidence to the contrary. That the scores contained in those prior years evaluations might have been influenced by discipline problems – to the indirect detriment of plaintiff's bid for the Project Technician position – does not seem to be coequal with the defendant's voluntary choice to actually directly consider a candidates immediate discipline history within the 12-month window. Regardless, the undisputed evidence demonstrates that discipline existed in the relevant period, upon which the defendant reasonably relied. That discipline, with or without the effect of any prior year's discipline, materially distinguished the plaintiff's record from Walker's.

To the Court, there is no negative inference to be drawn from the manner in which the defendant considered his evaluations such that a reasonable jury could find the defendant's conclusions, thereabout, pretextual. The plaintiff has cast blanket aspersions upon the evaluations as to their alleged subjectivity. But he has not bothered to refute them in any specific way. His rote disagreement with the defendant's evaluation is irrelevant. *See Beall,* 130 F.3d 614, 620; *Evans v. Technologies Applications and Serv. Co.,* 80 F.3d 954, 960-61 (4th Cir. 1996); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980) (explaining

---

the plaintiff's performance against other candidates.
 The defendant also contends that the Posting policy contains an obvious disclaimer such that it can be modified or suspended at any time. (Pl. Attach. XII.) The Court need not determine the disclaimer's effectiveness. More has already been said concerning an argument not actually made by the plaintiff than is necessary.

11

that in determining whether an employer's articulated reasons for dismissal are pretextual, the perceptions of the relevant decisionmaker are pertinent).

The plaintiff has also advanced a related objection that disciplinary history was not even a criterion identified by the defendant as relevant to the consideration of the bids. But the plaintiff concedes, and even argues, that the selection criteria used to fill the Project Technician position included: colleague performance, attendance, skills, and, in the case of multiple applicants with similar performance, seniority. (Ex. A at 34-35; Ex. B at 60; Ex. D at 32, 35.) The plaintiff has offered no reason to conclude that the "colleague performance" criteria would not accommodate a review of disciplinary concerns as any common interpretation of that phrase might reasonably imply. And, that was, in fact, in the professed contemplation of the decision maker: that discipline history is directly relevant to measuring performance. (Def. Ex. D at 53.) This seems obvious.

Next, the plaintiff argues that the defendant deviated from its Hourly Job Posting Practice (Pl. Attach. XII) in such a way as to create doubts as to the truthfulness of its reasons for denying the plaintiff's bid. Specifically, that policy requires that (1) an individual have remained in their current position for a year prior to bidding on a new position and (2) have not refused any other offer within a years time. *Id*. Without any evidentiary citation, the plaintiff contends that Walker had been in his current position less than a year prior to having applied for the Project Technician position and had also refused two other promotional opportunities within a years time. (Pl. Resp. at 6.) There is simply no evidence to that effect. In contrast, the defendant has put forward evidence that Walker had neither been in his job for less than a year nor declined any promotional opportunities. (Def. Ex. A at 129-30; Def. Ex. F at 43-44; Def. Ex. A at 126-27.) There are no issues of fact, therefore, as to whether the defendant improperly deviated from its Posting policy such that a reasonable jury could infer pretext. Moreover, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was

motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995); *accord Butler v. Berkeley County Sch. Dist.*, No. 2:98-369-2-11, 2000 WL 33158371, at *5 (D.S.C. Mar. 29, 2000).

The plaintiff has made other unsubstantiated and generalized claims regarding discriminatory intent of various individuals, not actually corroborated by any evidence or specifity. (See Pl. Resp. at 9-10.) The Court does not believe that evidence exists from which it could be reasonably concluded that the defendant's legitimate, non-discriminatory reason is incredible.

### III. Breach of Employment Contract and Breach of Employment Contract Accompanied by a Fraudulent Act

The plaintiff next contends that in the rejection of his bid the defendant breached an employment contract with him. The plaintiff contends that both the Posting policy and the additional criteria outlined by the defendant for the Project Technician modified the at-will nature of his employment with the defendant and created mandatory and contractual obligations.

South Carolina law provides that "termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002); *Williams v. Riedman*, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000). Under certain circumstances, however, an at-will employment arrangement can be modified by an oral promise, *see Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999), or by "[m]andatory, progressive discipline procedures . . .," *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005).

The Court, however, need not decide whether any employment contract was actually created by the actions of the defendant. Even if somehow one were, which the Court would not be inclined to conclude even if required, absolutely no evidence of breach exists. The plaintiff's allegations of breach are identical to those assertions advanced in regards to his

race discrimination claim: (1) that the defendant failed to disqualify Walker in accordance with the Posting policy and (2) that the defendant considered the verbal warning given to the plaintiff, when prior disciplinary conduct was not an expressly delineated criteria of the Project Technician position. (See Pl. Resp. at 14.) These bases have been flatly rejected above. There is no evidence that Walker was ineligible under the Posting policy, as discussed (Def. Ex. A at 129-30; Def. Ex. F at 43-44; Def. Ex. A at 126-27), and the plaintiff's disciplinary history is a matter squarely implicated by the express criteria "colleague performance," (Ex. A at 34-35). It is less than forthright to argue otherwise.

Because the plaintiff has no claim for breach of contract, her claim for breach of contract accompanied by a fraudulent act must fail as well. To recover for breach of contract accompanied by a fraudulent act, a plaintiff must show: "(1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Harper v. Ethridge*, 119, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502 (S.C. Ct. App. 1985)). The plaintiff has created no issues of fact as to the first element. The claim, therefore, should be dismissed.

**IV.    Counterclaim for Breach of Settlement Agreement**

The defendant lastly contends that it is entitled to summary judgment in its favor for the plaintiff's alleged breach of a prior settlement agreement between the parties. On August 6, 2004, the parties had previously entered into a Settlement Agreement and Release (the "Agreement") to resolve a then pending complaint of discrimination. (Def. Ex. A at 138-39.) The Agreement prohibited disclosure of information regarding the "existence or terms" of the settlement agreement and release. (Def. Reply Ex. 6 ¶¶ 6-9; Ex. A at 146-147.) The plaintiff does not dispute that he, in fact, disclosed the existence of the Agreement in the Complaint filed in this case. [Doc. 1, Compl. ¶ 9.] The plaintiff, however, contends that the Agreement expressly exempted such a disclosure from its confidentiality

14

obligations by permitting "truthful disclosures to an appropriate government agency related to alleged violations of law." (Def. Reply Ex. 6 ¶ 9.)

The plaintiff has not offered any authority that a voluntary averment in a Complaint filed in district court can reasonably qualify as a "disclosure to an appropriate government agency." Frankly, however, the Court believes the provision is ambiguous . What the parties intended by either "disclosure," "government agency" or "violations of law" is less than apparent. Under South Carolina law, which controls pursuant to the Agreement (Def. Reply Ex. 6 ¶ 13), where a contract is ambiguous, the fact finder generally must ascertain the parties' intentions from parol and other extrinsic evidence. *Duncan v. Little*, 682 S.E.2d 788, 790 (S.C. 2009). Ambiguities, however, are typically construed against the drafter of the agreement. *Id.* at 791. The face of the Agreement evidences that the defendant was the drafter of the Agreement at issue here. (Def. Reply Ex. 6 at 1.)

The Court has already stricken the objectionable paragraph and sealed the original filing of the Complaint. [Doc. 20.] Because the provision is less than artful and open to reasonable interpretation concerning the propriety of disclosing the Agreement in a complaint, the Court is hesitant to conclude that judgment should be entered for the defendant.

Other courts have found a violation of similar confidentiality provisions although, in the apparent absence of a liquidated damages clause, only to the benefit of nominal damages. *See Simontacchi v. Invensys, Inc.*, 2009 WL 426466 (W.D.N.C. February 19, 2009). *Simontacchi* did not appear to involve an exception for governmental disclosure, however. The undersigned admits that it would seem to render a confidentiality provision of the sort, at issue here, meaningless, if such a discretionary and public disclosure could be made by one side. Notwithstanding, the defendant, itself, voluntarily included the exception for governmental disclosure and drafted it, in the eyes of the Court, without any clear application here.

15

The Court would decline to recommend summary judgment on the defendant's counterclaim. Moreover, unless the parties have additional evidence as to their specific intent concerning the provisions at issue, it seems that the claim should be dismissed, construing the ambiguity against the defendant.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 60] be GRANTED in part and DENIED, in part. Specifically, the motion should be GRANTED as to all of the plaintiff's claims, which should be dismissed with prejudice. The motion should be DENIED as to the defendant's counterclaim.

IT IS SO RECOMMENDED.

                                                s/Bruce H. Hendricks
                                                United States Magistrate Judge

January 28, 2010
Greenville, South Carolina.